1

2

3

4

5

6

7

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

8

9

10

11

12

13

MICHAEL BRIAN MUSK,

                    Plaintiff,

          v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

                    Defendant.

NO.  C2:13-1965-RAJ-JLW

REPORT AND
RECOMMENDATION

14

BASIC DATA

15

Type of benefits sought:

16

          (X ) Disability Insurance

          (X) Supplemental Security Income – Disability

17

Plaintiff's:

18

          Sex: Male

19

          Age: 49 at application, 51 at ALJ hearing

20

Principal Disabilities Alleged by Plaintiff:  PTSD, Anxiety, head injury, knee injury, memory loss

21

Disability Allegedly Began: April 1, 2009, Amended to March 17, 2010

22

Principal Previous Work Experience: welder, human directional (advertising sign holder)

23

Plaintiff Last Worked: 2010

24

Education Level Achieved by Plaintiff: 2 years of college, welding certificate

REPORT AND RECOMMENDATION - 1

## PROCEDURAL HISTORY – ADMINISTRATIVE

Before ALJ Verrell Dethloff:

Date of Hearing: July 27, 2012

Date of Decision: August 13, 2012

Appears in Record at:  Decision AR 12-31, Hearing Transcript AR 39-49

Summary of Decision:

Claimant has not engaged in substantial gainful employment since his amended onset date. He has the severe impairments of depression, post traumatic stress disorder, personality disorder NOS, and alcohol abuse. He has non-severe impairments of trace degenerative changes in his knees, gastroesophageal reflux disease with small hiatial hernia. These impairments alone, or in combination, do not meet or medically equal a Listing. He has the Residual Functional Capacity (RFC) to perform the full range of work at all exertional levels, with nonexertional limitations. He can carry out simple and some complex tasks. He can maintain concentration, persistence, and pace throughout a normal workday. He would do best with limited contact with the public, coworkers, and supervisors. Based on this RFC, claimant can perform his past relevant work as a welder, leading to a conclusion that he is not disabled. Alternatively, the claimant is not disabled under the Medical-Vocational Guidelines (MVG).

Before Appeals Council:

Date of Decision: August 28, 2013

Appears in Record at: AR 1-6

Summary of Decision: Review Declined

## PROCEDURAL HISTORY – THIS COURT

Jurisdiction based upon: 42 U.S.C. § 405(g)

Brief on Merits Submitted by (X) Plaintiff  (X) Commissioner

## RECOMMENDATION OF

## UNITED STATES MAGISTRATE JUDGE

(X)  Remand for new determination.

## SUMMARY OF RECOMMENDATION

REPORT AND RECOMMENDATION - 2

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

The decision must be reversed, as the ALJ erred on both of the alternative findings upon which he based his decision. The Commissioner has conceded there is no substantial evidence to support the first of these findings: that Plaintiff can return to his previous work as a welder. The second finding, that the Guidelines compel a ruling of "not disabled," is an error of law. The current record is not sufficient for the court to determine whether Plaintiff is entitled to benefits, so the case must be remanded. On remand, the ALJ must correct further errors as to his consideration of the testimony of three physicians and a treating social worker. He must then make a new determination of Plaintiff's RFC, and obtain the testimony of a vocational expert to assist in determining whether Plaintiff is disabled. If he finds Plaintiff is disabled, the ALJ must then determine whether alcohol abuse is a contributing factor to his disability.

### STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), this Court must set aside the Commissioner's denial of Social Security benefits when the ALJ's findings are based on legal error or not supported by substantial evidence in the record as a whole. *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 (9th Cir. 2005). "Substantial evidence" is more than a scintilla, less than a preponderance, and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989).  The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and resolving any other ambiguities that might exist. *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  While the Court is required to examine the record as a whole, it may neither reweigh the evidence nor substitute its judgment for that of the Commissioner. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).  When the evidence is

REPORT AND RECOMMENDATION - 3

1   susceptible to more than one rational interpretation, it is the Commissioner's conclusion that

2   must be upheld. *Id.*

## EVALUATING DISABILITY

4   The claimant bears the burden of proving disability within the meaning of the Social

5   Security Act (the "Act"). *Meanel v. Apfel*, 172 F.3d 1111, 1113 (9th Cir. 1999) (internal

6   citations omitted). The Act defines disability as the "inability to engage in any substantial

7   gainful activity" due to a physical or mental impairment which has lasted, or is expected to

8   last, for a continuous period of not less than twelve months. 42 U.S.C. §§ 423(d)(1)(A),

9   1382c(a)(3)(A). A claimant is disabled under the Act only if his impairments are of such

10  severity that he is unable to do his previous work, and cannot, considering his age, education,

11  and work experience, engage in any other substantial gainful activity existing in the national

12  economy. 42 U.S.C. §§ 423(d)(2)(A); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th

13  Cir. 1999).

14  The Commissioner has established a five-step sequential evaluation process for

15  determining whether a claimant is disabled within the meaning of the Act. *See* 20 C.F.R. §§

16  404.1520, 416.920. The claimant bears the burden of proof during steps one through four. At

17  step five, the burden shifts to the Commissioner. *See also Valentine v. Comm'r of Soc. Sec.*

18  *Admin.*, 574 F.3d 685, 689 (9th Cir. 2009).

## ISSUES ON APPEAL

20      1. Did the ALJ properly determine that Plaintiff could perform his past relevant work?

21      2. Did the ALJ properly rely on the Medical Vocational Guidelines?

22      3. Did the ALJ properly reject the medical source opinions of Drs. Widlan, McDuffee, and Moore?

23

24      4. Did the ALJ properly reject the opinion of Amanda Westerfield, M.S.W.?

REPORT AND RECOMMENDATION - 4

1

## DISCUSSION

2

I.   <u>Past Relevant Work and Other Employment</u>

3

At Step 4 of the disability analysis, the ALJ must determine if the claimant can perform his

4

past relevant work. 20 C.F.R. §§ 404.1520(f) and 416.920(f). The ALJ must make factual

5

findings to support the conclusion. *Pinto v. Massanari*, 249 F.3d 840, 844-5 (9th Cir. 2001).

6

Here, the ALJ found that Plaintiff can perform his past relevant work as a welder. AR 27. "In

7

comparing the claimant's residual functional capacity with the physical and mental demands of

8

this work, I find that the claimant is able to perform it as actually performed." AR 27. Plaintiff

9

contends the ALJ erred by failing to provide analysis as to how he determined the mental

10

demands of this work.

11

The Commissioner concedes this error, agreeing that the determination that Plaintiff could

12

manage the mental demands of his past relevant work as a welder was unsupported by

13

substantial evidence. (Dkt 19/10). Despite the concession, the Commissioner contends this

14

error was harmless because the ALJ made an alternate finding of not disabled at step five based

15

on the MVGs.

16

The MVGs or "Grids" "are a set of tables that direct a conclusion of disability or

17

nondisability based on four factors: physical ability, age, education, and work experience."

18

*Stone v. Heckler*, 722 F.2d 464, 468 (9th Cir. 1983). The Grids are based on strength factors.

19

*Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). The ALJ may use the MVGs in

20

lieu of the testimony of vocational expert when the Grids accurately and completely describe a

21

claimant's abilities and limitations. *Reddick v. Chater*, 157 F.3d 715, 729 (1998). This applies

22

when the claimant's limitations are exertional, or both exertional and non-exertional, unless the

23

non-exertional impairments are sufficiently severe to significantly limit the range of work

24

permitted by the exertional limitations. *Hoopai v. Astrue*, 499 F.3d 1071, 1075 (9th Cir. 2007).

REPORT AND RECOMMENDATION - 5

1   However, the plain language of the regulation precludes use of the Grids where a claimant's

2   limitations are solely non-exertional. "[W]here a person has solely a nonexertional

3   impairment(s), the table rules do not direct conclusions of disabled or not disabled." 20 C.F.R.

4   § 404, Subpt. P, App. 2 § 200.00(e)(1); SSR 85-15, *available at* 1985 WL 56857 at *1. Case

5   law confirms this restriction. *See*, *Lounsburry v. Barnhart*, 468 F.3d 111, 1115 (9th Cir. 2006)

6   ("Where a claimant suffers only non-exertional limitations, the grids are inappropriate, and the

7   ALJ must rely on other evidence."); *Cooper v. Sullivan*, 880 F.2d 1152, 1155 (9th Cir. 1989)

8   (The Grids do not resolve the disability question when claimant has solely nonexertional

9   limitations.); *Jones v. Heckler*, 760 F.2d 993, 998 (9th Cir. 1985) ("significant non-exertional

10  limitations such as vision impairment and the inability to carry out and remember instructions

11  will render the application of the grids inappropriate.").

12      In this case, Plaintiff has only non-exertional limitations. As a result, application of the

13  MVGs is inapposite. The ALJ erred by relying solely upon the Grids and making a

14  determination of not disabled without the testimony of a Vocational Expert. Reversal and

15  remand for further proceedings is required. In addition to the errors at steps 4 and 5, the ALJ

16  committed errors in the evaluation of medical and lay evidence. These opinions are addressed

17  below so that they are properly credited on remand.

18      II.   Medical Evidence

19      The ALJ evaluates medical evidence as part of the record when determining disability. 20

20  C.F.R § 416.927(b). Rejection of a contradicted medical opinion provided by an examining

21  physician requires "specific and legitimate reasons" supported by substantial evidence in the

22  record. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). The Plaintiff contends that the ALJ

23  improperly rejected the medical source opinions of examining psychologists, Drs. Widlan,

24  McDuffee, and Moore.

1    The ALJ substantiated rejection of the opinions of these medical professionals based on

2    review of the longitudinal medical record and activities of daily living. AR 23. "Drs.

3    McDuffee, Widlan, and Moore supported their opinions with clinical findings. However, they

4    did not have the opportunity to review the record as a whole, which shows highly inconsistent

5    presentation at each of their exams, and overall normal mental status when presenting to

6    counseling and case management, outside the secondary gain context." AR 25. As a result, the

7    ALJ accorded greater weight to the mental status findings from treatment providers, rather than

8    the evaluating medical professional. AR 23. Plaintiff contends that this rejection of the medical

9    evidence lacked validity and specificity.

10    Dr. David Widlan evaluated Plaintiff and offered a medical source opinion about his

11    mental status, memory, cognition, and ability to follow directions and complete tasks. AR 437-

12    443. Dr. Widlan opined that "based on MSE [Mental Status Exam] performance and clinical

13    interview he is not capable of following moderately complex instructions." AR 438. Plaintiff

14    has deficits in social relatedness and managing social stressors. AR 437. He has difficulty

15    following and remembering directions, completing simple tasks and regulating his emotions.

16    AR 437. Dr. Widlan further explained that Plaintiff would require additional supervision to

17    consistently perform routine tasks, struggle with task completion, and have difficulty

18    responding to normal stressors in the workplace. AR 438-9.

19    The ALJ accorded no weight to Dr. Widlan's assessment, despite acknowledging that

20    Dr. Widlan found "significant cognitive and emotional difficulties," and "mood lability that

21    appeared beyond his control." AR 24. The ALJ further summarized Dr. Widlan's findings

22    concerning Plaintiff's struggles to follow simple directions, and impairment shown by the

23    Trails Making Test, object recall, and backwards counting. AR 24. The ALJ concluded that Dr.

24    Widlan "found that claimant would likely struggle with the normal stressors associated with

REPORT AND RECOMMENDATION - 7

1   employment, would clearly struggle to complete tasks that are not highly routine, and would

2   clearly require additional supervision to consistently perform routine work tasks due to

3   cognitive and emotional distortions. I accord no weight to this assessment." AR 24.

4       The ALJ also rejected the opinion provided by Victoria McDuffee, Ph.D. AR 24. The

5   ALJ cited Dr. McDuffee's observation that Plaintiff presented as '"coarse, labile, and intense"

6   with loud speech, vulgar language, and poor impulse control." AR 24. He concluded, "Dr.

7   McDuffee gave the claimant a Global Assessment of Functioning (GAF) score of 25, and

8   opined that he would be unable to manage the social and behavioral demands of regular work.

9   I accord no weight to her assessment or opinion." AR 24. The ALJ similarly assessed the

10   opinion of Peter Moore, Psy.D. "He opined that the claimant would have considerable

11   difficulty following even simple instructions, and would have much trouble persevering at

12   tasks. In stark contrast to notes from the claimant's treatment providers and previous

13   examiners, he noted that the claimant 'has good interpersonal skills in most situations' and

14   responds appropriately in most social situations. I accord little weight to the opinions of Dr.

15   Moore." AR 24.

16       The ALJ rejected the opinions of all three examining medical professionals, which had

17   generally consistent assessments. "An ALJ may reject an examining physician's opinion if it is

18   contradicted by clinical evidence." *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 199-2000 (9th

19   Cir. 2008). However, in this case, Drs. Widlan, McDuffee, and Moore provided significant

20   clinical evidence supporting their opinions.

21       Dr. Widlan observed paranoia, anxiety, depression, labile affect, and problems with

22   memory and concentration. AR 437. He administered memory and cognition exams. Plaintiff

23   could spell "world" forward but not backward. AR 438. Plaintiff could not count backward

24   from 100 by 3's and did not understand the instructions to count forward from zero by 7's. AR

REPORT AND RECOMMENDATION - 8

438. He could recall 3/3 objects immediately but only 1/3 after a five minute lapse. AR 438.

During the Trails Making Test, Plaintiff placed in the impaired range, and "he became quite

upset completing the simple trails and became labile before discontinuing." AR 438. Dr.

Widlan concluded that this response "was clearly not due to factitious behavior. He placed in

the non-malingering rang on the Rey (10/15)." AR 438. These results provide significant

clinical support for Dr. Widlan's opinion that Plaintiff had severe impairment in many areas of

cognitive and social factors. AR 439.

Dr. Victoria McDuffee, Ph.D. also conducted a clinical evaluation with similar results.

Plaintiff had difficulty with complex instructions. AR 344. He was unable to spell "world"

backward, and could only give marginal digit span forward and a deficient span backward. AR

344. According to Dr. McDuffee, these results "suggest significant issues with concentration,

memory and attention." AR 344. Dr. McDuffee also observed that Plaintiff is coarse, labile,

and intense, with loud, vulgar language and poor impulse control. AR 344. His hygiene was

poor and he was malodorous. AR 344. He has a low tolerance for frustration and poorly

managed affect. AR 344. He has severe limitations in many aspects of social functioning. AR

344. Based on the testing and observation, Dr. McDuffee concluded that Plaintiff will be

unsuccessful with employment. "He wants to work and engages in temp jobs at times. Minimal

hours and intermittent work is likely the best he will ever be able to participate in. The

demands of daily work requirements- social demands, behavior demands, appts—would be too

much for him to manage." AR 345.

Dr. Moore observed that Plaintiff was generally unkempt with slight body odor. AR

424. Plaintiff was polite and cooperative but anxious. AR 424. Plaintiff's affect ranged from

tense to irritable, and he became frustrated when he had difficulty with the testing but could

regain his composure. AR 424. While his speech was clear and logical, it was also lengthy and

REPORT AND RECOMMENDATION - 9

rambling. AR 424. Like Dr. Widlan, Dr. Moore performed several clinical tests which showed

impairment. For the Trails Making Test, a simple visual motor tracking task, Plaintiff was

slower than 99% of similarly aged peers. AR 427.  He could recall four digits forward and two

digits backward. 424. He could spell "world" forward but gave up on the backward spelling.

AR 424. He could not properly calculate change from $20 for a $17.50 item. AR 424. After

completing the testing, Dr. Moore concluded that Plaintiff has low average ability to remember

orally presented information, and borderline to low average ability to remember visual

material. AR 426. Plaintiff also had "considerable difficulty on measure of simple attention

and working memory." AR 427. His score on the Working Memory Index was in the

extremely low range, exceeded by 99% of his peers. AR 427. As a result, "although Mr. Musk

can understand instructions and information, he will have considerable difficulty remembering

even simple directions and will have much more trouble persevering at tasks and responding to

challenges effectively." AR 427.

The results of the observation and testing by the various medical professionals are

consistent. Plaintiff has significant issues with memory, concentration, task completion, and

managing stress and emotions. Despite the ALJ's contention, many of these issues are apparent

in treatment notes from regular care providers. From November 2011 to June 2012, evaluations

by various mental health providers reported: anxiety with restricted range of affect, impaired

intelligence and judgment, assessing "irritability and low frustration tolerance, mood liability,

and anxiety present." (AR 529-30); depressed and irritable mood, restricted affect, and

impaired judgment/insight (AR 534-5); euthymic and irritable mood, illogical and tangential

thought process, and impaired cognition and judgment (AR 539-40); suspicious attitude, loud

and pressured speech, irritable mood with blunted affect, impaired cognition and judgment

(AR 544-5).

REPORT AND RECOMMENDATION - 10

1    Plaintiff's case worker, Amelia Westerfield, M.S.W., described these same symptoms.

2    The ALJ selected a few examples of relatively normal functioning from a record replete with

3    examples of Plaintiff's mental impairments. "In June 2012, the claimant presented to Ms.

4    Westerfield as cooperative and friendly, with casual grooming, normal hygiene, normal

5    speech, normal psychomotor activity, restricted but appropriate affect, anxious but euthymic

6    mood, and good eye contact." AR 26. However, Ms. Westerfield's treatment notes support her

7    assessment of Plaintiff's anxiety and difficulty in social situations. AR 552 (anxious, slightly

8    blunt affect), 553 (anxiety, euthymic mood with slight blunt affect, periodic loud speech), 558

9    (anxiety, dysthymic mood with congruent affect), 559 (anxiety, symptoms impacting ability to

10   concentrate and follow daily routine, tense, anxious mood with congruent affect, loud volume),

11   561 (anxious mood with congruent affect), 562 (paranoia and anxiety, perception that he is

12   unfairly targeted, anxious mood and congruent affect), AR 566 (increasingly agitated and

13   perception that he is unfairly targeted by other tenant, difficulty understanding his role in the

14   situation, defensive, irritable mood with congruent affect), 572 (anxiety stemming from fear of

15   losing housing and perception that he is unfairly targeted, anxious mood with blunt affect, loud

16   speech), 573 (irritable mood), 576 (alcohol consumption for nerves and anxiety, speech overly

17   animated and circumstantial thought process), 577 (anxious mood, congruent affect), 578, AR

18   579 (defensive but cooperative, feeling unfairly targeted by neighbor, agitated mood and

19   affect), 586 (defensive with agitated mood, speech clear with angry tone, thought process

20   connected but illogical at times, perception that he is unfairly targeted). Ms. Westerfield's

21   treatment notes do not support the ALJ's contention that Plaintiff's regular treatment providers

22   observed normal mental status, rather than the extreme impairments described by the

23   consulting professionals. Ms. Westerfield consistently observed Plaintiff's anxiety, agitation,

24   and feelings of persecution from his fellow tenants.

REPORT AND RECOMMENDATION - 11

1    Rather than negate the clinical observations and testing, Plaintiff's mental health

2    providers confirm the limitations and impairments diagnosed by the Ph.D./Psy.D. consultants.

3    The ALJ erred in according no weight to the medical opinions grounded in clinical testing and

4    supported by treatment notes from lay witnesses in routine contact with Plaintiff.

5    The ALJ also noted that Plaintiff's activities of daily living—especially his model

6    building and seasonal volunteer work at a farmer's market—were incompatible with the severe

7    impairments described by Drs. Widlan, McDuffee, and Moore. However, both Drs. McDuffee

8    and Moore knew of Plaintiff's attempts to work and model building hobby. AR 343, 345, 424-

9    5. Even with knowledge of these activities, both doctors opined that Plaintiff had severe

10   impairments that would prevent him from sustained employment. AR 345, 426-7.

11   The ALJ cited Plaintiff's activities of daily living and generally normal presentation at

12   his regular mental health treatment appointments to reject the consistent opinions given by

13   medical professionals after substantial clinical observation and testing. Based on the evidence

14   in the record, these reasons were not legitimate and were not based on substantial evidence.

15   Rejection of these medical evaluations was error.

16   III. Lay Witness

17   Plaintiff assigns error to the ALJ's assessment of his case manager, lay witness

18   Amanda Westerfield, M.S.W. "In determining whether a claimant is disabled, an ALJ must

19   consider lay witness testimony concerning a claimant's ability to work." *Stout v. Comm'r of*

20   *Soc. Sec. Admin.*, 454 F.3d 1050, 1053 (9th Cir. 2006). This includes evidence from private

21   and public social welfare agency personnel. 20 C.F.R. 404.1513(d)(3). The ALJ may disregard

22   evidence from these lay sources after providing a germane reason for each of the witnesses.

23   *Turner v. Comm'r of Soc.Sec. Admin.*, 613 F. 3d 1217, 1224 (9th Cir. 2010).

24

REPORT AND RECOMMENDATION - 12

1

2

3

4

5

6

7

8

9

10

11

12

13

14

Ms. Westerfield submitted both an assessment and letter detailing her opinion of Plaintiff's mental health and limitations. AR 522-26. Ms. Westerfield states that Plaintiff has mental health symptoms of depressed mood, anxiety, irritability and outbursts of anger, hypervigilance, exaggerated startle response, difficulty concentrating, and insomnia. AR 522. She continues, "Mr. Musk tends to present as irritable and guarded, which impairs his ability to engage in socially appropriate behavior with others." AR 522. She reports observations of verbal altercations with neighbors and peers, and misinterpretations during interactions with fellow tenants and staff members of his housing facility. He becomes confused and upset. He can become overwhelmed and frustrated under pressure leading to verbal aggression toward others. AR 522. Ms. Westerfield also observed marked limitations in memory, and ability to understand, remember, and carry out detailed instructions. AR 523. Plaintiff's "concentration, memory, and understanding are short-term and often disrupted. Completing tasks and following instructions are difficult without guidance. He forgets verbal instructions quickly; he needs things written down." AR 526.

15

16

17

18

19

20

21

22

23

The ALJ accorded no weight to Ms. Westerfield's lay opinion. AR 25. To reject the evidence, the ALJ cited Ms. Westerfield's treatment notes reflecting intact cognition on mental status exam and behavior that is not consistent with extreme social limitations. AR 26. The ALJ further states that Ms. Westerfield's notes indicate that Plaintiff is stable and managing symptoms, spends significant time on airplane models, and has a volunteer job which are all inconsistent with the alleged cognitive and social limitations. AR 26. Also, Ms. Westerfield's notes do not reflect persistent difficulties interacting with neighbors or Plaintiff's alcohol use and its impact on his limitations. AR 26. The Plaintiff contends these reasons are not specific and germane as required to reject lay witness opinion.

24

REPORT AND RECOMMENDATION - 13

1    Once again, the ALJ selects a few examples of relatively normal functioning from a

2    record replete with examples of Plaintiff's mental impairments. "In June 2012, the claimant

3    presented to Ms. Westerfield as cooperative and friendly, with casual grooming, normal

4    hygiene, normal speech, normal psychomotor activity, restricted but appropriate affect, anxious

5    but euthymic mood, and good eye contact." AR 26. However, Ms. Westerfield's treatment

6    notes support her assessment of Plaintiff's anxiety and difficulty in social situations. AR 552

7    (anxious, slightly blunt affect), 553 (anxiety, euthymic mood with slight blunt affect, periodic

8    loud speech), 558 (anxiety, dysthymic mood with congruent affect), 559 (anxiety, symptoms

9    impacting ability to concentrate and follow daily routine, tense, anxious mood with congruent

10    affect, loud volume), 561 (anxious mood with congruent affect), 562 (paranoia and anxiety,

11    perception that he is unfairly targeted, anxious mood and congruent affect), AR 566

12    (increasingly agitated and perception that he is unfairly targeted by other tenant, difficulty

13    understanding his role in the situation, defensive, irritable mood with congruent affect), 572

14    (anxiety stemming from fear of losing housing and perception that he is unfairly targeted,

15    anxious mood with blunt affect, loud speech), 573 (irritable mood), 576 (alcohol consumption

16    for nerves and anxiety, speech overly animated and circumstantial thought process), 577

17    (anxious mood, congruent affect), 578, AR 579 (defensive but cooperative, feeling unfairly

18    targeted by neighbor, agitated mood and affect), 586 (defensive with agitated mood, speech

19    clear with angry tone, thought process connected but illogical at times, perception that he is

20    unfairly targeted). The notes show significant anxiety as well as feelings of persecution and

21    misunderstanding resulting from interactions with fellow tenants. These are precisely the

22    mental health issues described by Ms. Westerfield. As a result, the ALJ's reasons for rejecting

23    Ms. Westerfield's opinion were not supported by substantial evidence.

24    IV. Disposition

REPORT AND RECOMMENDATION - 14

1    Reversal is, therefore, required.  The decision whether to remand for additional

2  evidence or simply to award benefits is within the Court's discretion. *Reddick*, 157 F.3d at 728.

3  A remand for award of benefits is appropriate when each part of the three-part credit-as-true

4  standard is satisfied. *Garrison v. Colvin*, --- F.3d ----, 2014 WL 3397218 at *20 (9th Cir.

5  2014).  The requirements are:

6           (1) the record has been fully developed and further administrative proceedings
          would serve no useful purpose; (2) the ALJ has failed to provide legally
7           sufficient reasons for rejecting evidence, whether claimant testimony or medical
          opinion; and (3) if the improperly discredited evidence were credited as true, the
8           ALJ would be required to find the claimant disabled on remand.

9  *Id*.

10   Because the record in this case is incomplete, the court must remand for further

11  proceedings. Upon remand, the ALJ should credit the previously rejected medical and lay

12  witness evidence and incorporate the opinions into a new RFC. After establishing an RFC that

13  accurately reflects the Plaintiff's capacity, the ALJ should solicit testimony from a Vocational

14  Expert as to Plaintiff's employability. If, upon remand, the ALJ finds that plaintiff is disabled,

15  he must then determine whether plaintiff's alcohol abuse is a contributing factor to his

16  disability, as required by 20 C.F.R §§ 404.1535, 416.935 and *Bustamante v. Massanari*, 262

17  F.3d 949, 955 (9th Cir. 2001).

18                                      CONCLUSION

19   For the foregoing reasons, the Court recommends that this case be REVERSED and the

20  case REMANDED for further proceedings.  A proposed order accompanies this Report and

21  Recommendation.

22   Objections to this Report and Recommendation, if any, must be filed with the Clerk

23  and served upon all parties to this suit no later than fourteen (14) days after the date on which

24  this Report and Recommendation is signed.  If no timely objections are filed, the Clerk shall

REPORT AND RECOMMENDATION - 15

1  note this matter for the earliest Friday after the deadline for objections, as ready for the

2  Court's consideration. Failure to file objections within the specified time may affect a party's

3  right to appeal.

4       If objections are filed, any response is due within fourteen (14) days after being served

5  with the objections.  A party filing an objection must note the matter for the court's

6  consideration fourteen (14) days from the date the objection is filed and served.  Objections

7  and responses shall not exceed twelve pages.

8       DATED this 16th day of September, 2014.

9

10

11                                    _____

12                                    JOHN L. WEINBERG
                                      United States Magistrate Judge

13

14

15

16

17

18

19

20

21

22

23

24

REPORT AND RECOMMENDATION - 16